## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON JANUARY 1999 SESSION

----------------------------------------------------------------------------

NATIONSBANK, N.A. (SOUTH),  )   Shelby Chancery No. 1098822-3
                            )
    Plaintiff/Appellee     )   Appeal No. 02A01-9805-CH-00134
                            )
v.                          )
                            )   ┌─────────────────────┐
                            )   │                     │
MILLINGTON HOMES            )   │   F ЦЕ D             │
INVESTORS, LTD.,            )   │                     │
                            )   │   **February 19, 1999** │
    Defendant/Appellant    )   │                     │
                            )   │   **Cecil Crowson, Jr.** │
                            )   │   **Appellate Court Clerk** │
                            )   └─────────────────────┘

### APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE D. J. ALLISANDRATOS, CHANCELLOR

**For the Appellant:**
R. Grattan Brown, Jr.,
Larry H. Montgomery, and
Charles Wesley Fowler,
GLANKLER BROWN, PLLC
One Commerce Square, Ste. 1700
Memphis, TN 38103

**For the Appellee:**
Philip D. Irwin
NEAL & HARWELL, PLC
2000 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219

**AFFIRMED**

                                             **WILLIAM H. INMAN, Senior Judge**

**CONCUR:**

**W. FRANK CRAWFORD, Judge**

**DAVID R. FARMER, Judge**

This is an action to collect 32 promissory notes executed by the defendant in 1985, 1986, and 1987 payable to USA Fairfield Realty Fund, LTD. and assigned to Citizens Federal Bank, N.A., on order, on December 20, 1991, without recourse.

Appendix A is a diagrammatic explanation of the commercial lineage of the defendant.

These entities are investment vehicles whose parent company, USA Properties Fund, Inc.,[1] exclusively managed the business affairs of Millington Homes, an apartment complex located in the City of Millington whose governing body changed the zoning designation from residential to industrial which, when finalized, would have triggered foreclosure of the federal financing mortgages. This looming problem gave impetus to a sale of the apartments to the City of Millington. The plaintiff bank, an alleged unsecured creditor of the defendant by virtue of its asserted ownership of the promissory notes, filed this action to recover the proceeds of the notes.[2] The defendant pleaded (1) the bar of the Statute of Limitations, T.C.A. § 28-3-109(c) for all notes dated before January 14, 1987; (2) estoppel, alleging that the plaintiff "represented to defendant that it would accept a lesser amount in satisfaction of the notes; (3) a general denial of the allegations.

---

[1]Edward Herzog is an officer and/or an agent for all but one (USA Millington Homes, Ltd.) of these commercial entities:
1.    USA Fairfield;
2.    Vice-President of (Defendant/Appellant) Millington Homes Investors, Ltd.;
3.    Vice-President of USA Properties Fund, Inc., and authorized signatory on behalf of USA Fairfield;
4.    Vice-President of Finance for (Defendant/Appellant) Millington Homes Investors, Ltd.;
5.    Vice-President of USA Millington Homes, Inc.;
6.    Executive Vice-President and Chief Financial Officer of USA Properties Fund, Inc.

[2]Both its 75% interest, and, as agent, the remaining 25%. The total amount attached was circa $800,000.

To the pleading of the defendant of estoppel, the plaintiff relied upon the Statute of Frauds, T.C.A. § 29-2-101(b)(1).

The motion of the plaintiff for summary judgment was granted upon a finding by the Chancellor that the action was (1) not time-barred, and (2) notwithstanding that a dispute existed as to whether the plaintiff orally agreed to accept a lesser sum than was owing on the notes, such dispute did not involve a material issue because the alleged promise was never reduced to writing. The defendant appeals, and presents for review two issues which we reproduce *in haec verba:*

I.      Whether the trial court erred in ruling that NationsBank's agreement to accept a lesser sum in satisfaction of Millington Homes' liability, and NationsBank's agreement to put that agreement in writing, are barred by the Statute of Frauds provided by T.C.A. § 29-2-101(b)(1).

II.     Whether the trial court erred in ruling that the Statute of Limitations provided by T.C.A. § 28-3-109(c) did not bar any of NationsBank's claims.[3]

We shall restate in context the identity and posture of the entities who are directly or peripherally involved in this litigation.

The defendant, Millington Homes, is a Tennessee limited partnership whose general partner is USA Millington Homes LTD. USA Millington Homes LTD is a Tennessee limited partnership whose general partner is USA Millington Homes, Inc. USA Millington Homes, Inc., is a Tennessee corporation whose stock is owned by USA Properties Fund, Inc.

In 1984, USA Properties Fund, Inc., entered into a joint venture with Equitable Services Corporation ("Equitable"), a subsidiary of Citizens Federal

---

[3]At the outset, we note that some arguments of the defendant, such as its insistence that the plaintiff did not own the notes when suit was filed, are not the subject of an issue presented for review. Accordingly, we will confine our discussion of the case to the issues presented.

Savings & Loan Association, later known as Citizens Federal Bank ("Citizens"). The joint venture was named USA/Fairfield Realty Fund LTD ("USA Fairfield"). USA Properties Fund, Inc., was the general partner of USA Fairfield, and Equitable was its sole limited partner.

On December 3, 1991, USA Fairfield, USA Properties Fund, Inc. and Equitable entered into an agreement whereby Equitable would transfer 3.65% of its limited partnership interest in USA Fairfield to USA Properties Fund, Inc., and transfer 96.35% of its limited partnership interest in USA Fairfield to USA Fairfield. Pursuant to this agreement, USA Fairfield assigned to Equitable an undivided 75% interest in and to the proceeds of 32 promissory notes made by Millington Homes (the "Notes", which, as of October 30, 1991, had an aggregate principal balance of One Million Forty Thousand Dollars $$1,040,000.). USA/Fairfield was to retain the remaining 25% interest in the Notes.

The agreement also provided that:

The assignment of the Millington Notes shall be effectuated by Fairfield's delivery of the Millington Notes to Citizens Federal Bank as Agent pursuant to an Agency Agreement . . . which shall be executed by Fairfield and Equitable.

USA Fairfield endorsed each of the Notes assigning ". . . all of its right, title, and interest in and to the within instrument, without recourse, to Citizens Federal Bank." USA Fairfield then delivered the Notes to Citizens which held them as Agent for Fairfield and Equitable as owners of 25% and 75% interests in the Notes, respectively.

On April 9, 1996, Milllington Homes contracted to sell the apartments in Millington, Tennessee, to the City of Millington, Tennessee. The Sales Agreement required the seller to notify the buyer on or before June 24, 1996, whether it had obtained the "Seller's Approvals," which required the approvals of the Millington

4

Homes partners and such creditors of the seller, as in seller's judgment, it deemed necessary.

Paragraph 3.2 of the Sales Agreement provided in pertinent part as follows:

Escrow Closing Period. The Escrow Closing shall occur on or before the expiration of thirty (30) days following the later of notice from Buyer to Seller of the fulfillment of Buyer's Contingency Events (as defined below), and notice from Seller to Buyer of the fulfillment of Seller's Contingency Events (as defined below), but in no event shall the Escrow Closing occur later than August 1, 1996 (the "Escrow Closing Period"). Notice of fulfillment of Buyer's Contingency Events shall be given by Buyer to Seller on or before June 24, 1996, ("Buyer's Notice Date"), *and notice of fulfillment of Seller's Contingency Events shall be given by Seller to Buyer on or before June 24, 1996, ("Seller's Notice Date").* Buyer's failure to give such notice on or before Buyer's Notice Date shall be deemed Buyer's acceptance that Buyer's Contingency Events have been fulfilled or waived, and Seller's failure to give such notice on or before Seller's Notice Date shall be deemed Seller's acceptance that Seller's Contingency Events have been fulfilled or waived.

Paragraph 4.2.2.1 of the Sales Agreement provided in pertinent part as follows:

Seller's Approvals. The sale of the Real Property to Buyer is contingent upon Sellers obtaining approval of such sale by (a) the partners of Seller and the partners of the general partner of Seller as required by the applicable limited partnership agreement(s), and (b) *such creditors of Seller as in Seller's judgment may be necessary, ("Seller's Approval"), and Seller's delivery of written confirmation of Seller's Approvals to Buyer.* Seller shall commence its efforts to obtain such approvals as soon as practicable after execution of this Agreement by Buyer and Seller. Seller shall diligently pursue the securing of such approvals, and shall promptly notify Buyer of the obtaining of Seller's Approvals or of any fact or occurrence with respect to a failure of Seller to obtain Seller's Approvals as soon as practicable after discovery thereof, but in any event, not later than Seller's Notice Date.

By letter dated April 19, 1996, Herzog informed Christine Moss, a NationsBank Vice-President in Tampa, Florida, of Millington Homes' proposed sale of the apartments and sent her a copy of the Sales Agreement which imposed a deadline of June 24, 1996. Whether Herzog, for the defendant, and Moss, for the

plaintiff, orally agreed to a reduction of the amount owing on the Notes, is disputed; likewise, whether Moss agreed to reduce the purported oral agreement to writing is disputed. If a resolution of this narrow issue was relevant and material to a disposition of the case, it is clear that the motion for summary judgment was improvidently granted. *See, Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993); Rule 56, T. R. C. P.

Our review of the findings of fact made by the trial Court is *de novo* upon the record of the trial Court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. R. APP. P., RULE 13(d); *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26 (Tenn. 1996). Where there is no conflict in the evidence as to any material fact, the question on appeal is one of law, and the scope of review is *de novo* with no presumption of correctness accompanying a chancellor's conclusions of law. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87 (Tenn. 1993). For the purposes of this opinion, and no other, we assume, as did the Chancellor, that the plaintiff orally agreed to compromise the debt and to accept a lesser sum [32%] than was owing on the aggregated Notes, and that such agreement was never reduced to writing.

The defendant agrees that the oral agreement was never reduced to writing, despite, as we read the record, its repeated and unavailing efforts to persuade the plaintiff to do so. In light of the language of T.C.A. § 29-2-101(b)(1),[4] the

---

[4]The statute provides as follows:

> No action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any write promise, agreement or commitment to lend money or extent credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person by him thereunto lawfully authorized.

defendant seeks to avoid the application of the Statute of Frauds upon the theories of promissory and equitable estoppel.

Promissory estoppel is defined in *Amacher v. Brown-Foreman Corporation,* 826 S.W.2d 480 (Tenn. App. 1991). It is

> "[A] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise . . ."

*Amacher* was not concerned with the issue of the Statute of Frauds, but we refer to it for definitional purposes. We are not aware of any decisional law of this State which addresses the precise issue; to the contrary, the thrust of the cases is that promissory estoppel is not recognized as an exception to the Statute of Frauds. *See, e.g., S.I.B.C. v. Ford Mtr. Credit Co.,* 911 S.W.2d 720 (Tenn. App. 1995).

Equitable estoppel, a distinct and disparate doctrine, is recognized in Tennessee as an exception to the Statute of Frauds. *See, e.g., Baliles v. Cities Serv. Co.,* 578 S.W.2d 621, 624 (Tenn. 1979). Cases in which it is recognized are those "where to enforce the Statute of Frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Id.* The elements of equitable estoppel are:

(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;

(2) Intention, or at least expectation that such conduct shall be acted upon by the other party;

(3) Knowledge, actual or constructive of the real facts.

As related to the party claiming the estoppel they are:

(1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question;

7

(2)    Reliance upon the conduct of the party estopped; and

(3)    Action based thereon of such a character as to change his position prejudicially.

The alleged oral agreement by the plaintiff to reduce the oral agreement to writing does not estop the plaintiff from its reliance on the Statute of Frauds. In *Patterson v. Davis,* 192 S.W.2d 227 (Tenn. 1946), the Court refused to allow an agreement to reduce a contract to writing to take the underlying contract out of the Statute, holding that "[S]uch an agreement, if we assume it to have been made, avails nothing, for a parol contract, unenforceable under the Statute, is not made binding by a further parol agreement to reduce it to writing."

In short, we find no evidence of overreaching or fraud in this record. And we agree with the Chancellor that there is no evidence of the defendant's reliance upon the alleged oral promise to reduce the debt, which would have been a simple matter, if nothing else, of a creditor's grace. The defendant argues, *inter alia,* that it obtained the limited partners' approval of the sale of the apartments to the City of Millington based upon its representation to them that the plaintiff would reduce its debt [which would result in a greater payment to the limited partners]. But the record reveals that the defendant sought such approval many weeks *before* the oral statements were made. Moreover, the record is clear on the point that the rezoning would result in a foreclosure of the federal mortgages, thereby "wiping out" the limited partners.

Summary judgment cannot be granted if there is a genuine dispute as to a material fact. Rule 56, T.R.C.P., *Byrd v. Hall, supra.* In making a determination of whether a genuine issue of material fact exists, the Court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party and discard all countervailing evidence.

8

If there is a dispute as to any material fact or doubt as to conclusions to be drawn from that fact, or uncertainty as to whether material facts are in dispute, summary judgment must be denied. *Id.*

As stated, whether the plaintiff orally agreed to accept a lesser sum [32%] in payment of the debt, and agreed to reduce the oral agreement to writing, is disputed. These are the only factual disputes that the defendant identifies. The issue then becomes whether such disputes are material. We agree with the Chancellor that neither is material and neither created a genuine issue for trial. Conclusive proof that the plaintiff agreed as alleged would avail the defendants nothing in light of the plain language of the Statute. *Patterson v. Davis, supra.*

The issue of the Statute of Limitations is a more difficult one. T.C.A. § 28-3-109(c) provides that the cause of action on demand notes shall be commenced within ten (10) years after the cause of action is accrued. A cause of action on a demand note, by statute, accrues at the time of the making of the note. T.C.A. § 28-1-102.

Twenty-six of the thirty-two notes were made more than ten years before January 14, 1997, the date the complaint was filed. Nothing more appearing, such as an agreed extension, renewals, or a partial payment, twenty six of the notes are time-barred.

The Chancellor ruled that an agreement between USA/Fairfield, Equitable, and Citizens tolled the Statute. This agreement was entered into on December 20, 1991 "by and among USA/Fairfield Realty Fund, LTD, (Fairfield) a California limited partnership, Equitable Services Corporation, and Citizens Federal Bank, (agent)."

By this Agreement, Fairfield (1) delivered to Citizens Federal Bank the original notes executed by Millington Homes Investors, LTD.; (2) retained a 25% interest in the Notes, and (3) Equitable received a 75% interest. It was agreed that Citizens Federal Bank would hold the notes as agent for Fairfield and Equitable.

The Agreement provided:

3. <u>Demand for payment of notes.</u>
"Notwithstanding the status of the Millington Notes as demand notes, Agent shall not make demand for payment thereof prior to August 1, 1997 unless one of the following events occurs, in which case Agent shall make demand for payment:"
(a)(b)(c)

Of the contingencies material here, the first to occur was the sale by the defendant of another asset referred to as Flag Manor Apartments in December, 1995, which triggered the plaintiff's right to demand payment.

The defendant argues that this Agency Agreement, held by the Chancellor to have tolled the Statute of Limitations, is not binding on the defendant because it was not a party thereto and that creditors cannot agree without the consent of the debtor to impair a debtor's ability to invoke the Statute of Limitations.

Countering this argument, the plaintiff insists that the defendant is a limited partnership whose sole general partner, USA Millington Homes, LTD, is also a limited partnership. USA Fairfield Realty LTD is the sole limited partner of USA Millington Homes, LTD, and is a California limited partnership. USA Fairfield's sole general partner is USA Properties Fund, Inc., which is the defendant's managing agent. The Millington notes at issue in this case, and the Agency Agreement, were executed by USA Fairfield Realty LTD, the sole limited partner of the general partner of the defendant. Edward Herzog was an officer for both the

defendant and USA Properties, which was the parent company of the defendant and, as stated, the managing agent.

Given these circumstances, we reject the argument of the defendant-appellant that the Agency Agreement was not binding on it. The incongruity of the defendant's argument appears in various aspects, not the least of which is its insistence that its parent company and managing agent, USA Properties Fund, Inc., had no authority to bind it by the Agency Agreement, on the one hand, but that USA Properties Fund, Inc., had the authority to bind the plaintiff to an oral agreement on its behalf, on the other. Moreover, the defendant's audited financial statements from 1991 to 1996 describe the Millington notes as "advances from affiliate" and emphasize that no demand can be made on the notes before August 1, 1997 except upon sale or refinancing of the property.

We agree with the Chancellor that the 1991 Agreement changed the date of the commencement of the running of the Statute, and that the complaint was timely filed.

The Chancellor further responded to the issue of the Statute of Limitations by holding that the parties agreed by a "pattern of conduct to modify the notes into a single indebtedness" which was acknowledged by a payment by the defendant in December 1995 which recommenced the running of the Statute. The record indicates that before the complaint was filed the defendant considered the notes to be one debt, i.e., an aggregated debt with a common interest note and common date of maturity. Payments were always made "on the debt," or on "the Millington Notes." Mr. Herzog so testified. A host of documents treat the notes as one debt; in a May 22, 1996 letter to its limited partners, the defendant references the debt as the "NationsBank (unsecured note)".

A partial payment of a debt is an acknowledgment of the debt and raises an implied promise to pay the balance owing. *See, Graves v. Sawyer,* 588 S.W.2d 542 (Tenn. 1979); *Farmers & Merchants Bank v. Templeton,* 646 S.W.2d 920 (Tenn. App. 1982). In the circumstances of this business matter we think the holder of the notes was free to credit them as it chose. We agree with the Chancellor that the voluntary payment in 1995 recommenced the running of the Statute.

For the reasons discussed, the judgment is affirmed at the costs of the appellant and the case is remanded for all appropriate purposes.

_____
William H. Inman, Senior Judge

CONCUR:


_____
W. Frank Crawford, Judge


_____
David R. Farmer, Judge